UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NANETTE LEPORE, ROBERT SAVAGE,
ROBESPIERRE, INC., and NLHE LLC,

                              Plaintiffs,

                    -v.-

HARTFORD FIRE INSURANCE
COMPANY,

                              Defendant.

18 Civ. 689 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

This case stems from a lawsuit filed in the courthouse next door.

Plaintiffs Nanette Lepore, Robert Savage, Robespierre, Inc., and NLHE (LLC)

(collectively, the "Lepore Parties," or "Plaintiffs") currently face a lawsuit,

entitled *NL Brand Holdings, LLC, et al.* v. *Nanette Lepore, et al.*, Index

No. 656682/2016, that was filed in the Supreme Court of the State of New

York, New York County, on December 21, 2016 (the "NL Suit"). The Lepore

Parties have brought this action to compel the Hartford Fire Insurance

Company ("Hartford" or "Defendant") to defend them in the NL suit, under

several insurance policies that Hartford issued (the "Hartford Policies" or the

"Policies").

The Hartford Policies contain two noteworthy exclusions to Hartford's

duty to defend Plaintiffs in litigation. The first exclusion provides that Hartford

is not obligated to defend Plaintiffs for alleged infringement or violation of

intellectual property rights and, notably, it contains a paragraph that purports

to exclude coverage of *any* injury or damage alleged in *any* claim or suit that

also alleges infringement or violation of any intellectual property right (the "IP Exclusion"). The second excludes coverage for all claims arising out of a breach of contract (the "Breach Exclusion"). Citing these exclusions, Hartford disclaims any obligation to defend Plaintiffs in the NL Suit. Plaintiffs respond that Hartford has both overread these exclusions and misclassified the allegations in the NL Suit. They have brought this suit for both declaratory relief and money damages.[1]

The parties have cross-moved for summary judgment on the question of the duty to defend. Hartford also asks for summary judgment in its favor on Plaintiffs' claim of breach of the covenant of good faith and fair dealing. While the cited exclusions are undoubtedly broad, the Court finds that Hartford has interpreted them correctly. The NL Suit alleges a number of intellectual property violations by Plaintiffs, any one of which suffices bring the case within the IP Exclusion. The allegations in the NL Suit are also wholly bound up in Plaintiffs' contractual obligations. In consequence, the allegations in the NL Suit are subject to the Hartford Policies' IP Exclusion *and* Breach Exclusion, and Hartford is not required to defend Plaintiffs. The Court therefore grants Defendant's motion for summary judgment.

---

[1]     The Lepore Parties also allege a breach by Hartford of the implied covenant of good faith and fair dealing.

# BACKGROUND[2]

## A.     Factual Background

### 1.     The Parties

The Lepore Parties are a collection of parties tied to Nanette Lepore ("Lepore"), a fashion designer residing in New York, New York. (Lepore 56.1 ¶ 1). Robert Savage ("Savage") is her spouse and business partner, who also resides in New York. (*Id.* at ¶ 2). Robespierre, Inc. ("Robespierre") and NLHE LLC ("NLHE") are a New York corporation and a New York limited liability company, respectively, which share a principal place of business in New York City. (*Id.* at ¶¶ 3-4). Defendant Hartford is a Connecticut corporation with its principal place of business in Hartford, Connecticut. (*Id.* at ¶ 5).

---

[2] The facts alleged herein are largely drawn from Hartford's Local Rule 56.1 Statement of Undisputed Facts ("Hartford 56.1" (Dkt. #33)), and the Plaintiffs' 56.1 Statement of Undisputed Facts ("Lepore 56.1" (Dkt. #41)). Citations to a party's Rule 56.1 Statement incorporate by reference the documents and testimony cited therein. Where a fact stated in a movant's Rule 56.1 Statement is supported by evidence and denied with merely a conclusory statement by the non-movant, the Court finds such fact to be true. *See* Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be submitted by the opposing party."); *id.* at 56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

For convenience, the parties' briefs in connection with Defendant's Motion for Summary Judgment are referred to as "Hartford Br. (Dkt. #34); "Lepore Opp." (Dkt. #49); and "Hartford Reply" (Dkt. #54). The parties' briefs in connection with Plaintiffs' motion for partial summary judgment are referred to as "Lepore Br." (Dkt. #44); "Hartford Opp." (Dkt. #49); and "Lepore Reply" (Dkt. #57).

## 2.      The Hartford Policies

Any analysis must begin with an examination of the Hartford Policies. Robespierre purchased insurance policies from Hartford through the Donald P. Pipino Company for insurance coverage for Robespierre and NLHE from March 31, 2013, to March 31, 2014.  (Lepore 56.1 ¶ 6).  The policies in dispute are a series of Commercial General Liability Policies, numbered UUN AL2562, and Umbrella Liability Insurance Policies, numbered 45 XHU JE8586, for the policy periods March 31, 2014, to March 31, 2015; March 31, 2015, to March 31, 2016; and March 31, 2016, to March 31, 2017.  (Hartford 56.1 ¶ 31).  For purposes of this dispute, these policies contain the same language regarding coverage and exclusions and, therefore, the Court refers to them collectively.  (*Id.* at ¶ 32; *see also* Transcript of Conference of March 5, 2018 at 4:21-5:3).

The Hartford Polices provide that Hartford:

> will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. [Hartford] will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, [Hartford] will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. [Hartford] may, at [its] discretion, investigate any offense and settle any claim or "suit" that may result[.]

(Hartford 56.1 ¶ 33).  "Personal or advertising injury," in turn, is defined as follows:

17. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

\* \* \*

d. Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organizations goods, products or services[.]

(*Id.* at ¶ 34).

Coverage under the Policies is limited by a number of exclusions, two of which are relied on by Hartford in this case. (Lepore 56.1 ¶¶ 10-17). First is the "IP Exclusion," by which Hartford does not provide coverage for the following claims involving intellectual property:

(1) "Personal and advertising injury" arising out of any actual or alleged infringement or violation of any intellectual property right, such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity.

(2) Any injury or damage alleged in any claim or "suit" that also alleges an infringement or violation of any intellectual property right, whether such allegation of infringement or violation is made against you or any other party involved in the claim or "suit", regardless of whether this insurance would otherwise apply.

(Hartford 56.1 ¶ 35). The second exclusion is the Breach Exclusion, which limits coverage for any "'Personal and advertising injury' arising out of a breach of contract, except an implied contract to use another's 'advertising idea' in your 'advertisement.'" (*Id.* at ¶ 36).

### 3. The NL Suit

On December 21, 2016, the Lepore Parties were named as defendants in the NL Suit in the New York Supreme Court. (Lepore 56.1 ¶ 21). The NL Suit alleges 17 causes of action, among them breach of contract, tortious interference with advantageous business relationship, common law unfair competition, breach of fiduciary duty, breach of the covenant of good faith and fair dealing, and unjust enrichment. (*Id.* at ¶ 22).

According to the underlying complaint (the "NL Complaint" (Dkt. #8-2)), the suit arose from Lepore's 2014 sale of the core assets of her businesses, including her "trademarks, copyrights, Internet domain names, license agreements, social media accounts, apparel designs, branding, and other Intellectual Property and related goodwill, consisting of among other things, her primary namesake trademark NANETTE LEPORE (collectively, the "Purchased IP")." (*Id.* at ¶ 23; Hartford 56.1 ¶ 2). The NL Plaintiffs alleged that they paid Lepore millions of dollars for the Purchased IP and provided her a minority ownership share in a new entity, NL Brand Holdings LLC, that they established to hold the Purchased IP. (*Id.*). The NL Plaintiffs further allege that they signed Lepore to a consulting agreement, which required her ongoing support for the NANETTE LEPORE brand. (Hartford 56.1 ¶ 3).

The NL Suit alleges that the purchase allowed NLHE, which Lepore controls, a license to use the trademark for certain limited bespoke clothing, which would be sold through limited retail channels (the "License Agreement").

(Hartford 56.1 ¶ 4). Significantly, however, the purchase agreement or agreements placed limitations on Lepore and NLHE's use of the license:

> Such restrictions included, inter alia, limits on the type of women's bespoke and ready-to-wear clothing that NLHE could sell (only the types of women's clothing that NLHE has sold during the prior 2 years, defined as 'Products' or 'Articles'); very limited rights to use only three forms of the NANETTE LEPORE trademark and related logos (the 'Licensed Marks'), subject to style-guidelines; limitations on how such products sold under the NANETTE LEPORE brand could initially be priced; prohibitions against selling NANETTE LEPORE-branded products to certain categories of retailers; extensive non-compete obligations; covenants to protect and not defame or harm the Purchased IP and attendant goodwill; and other typical protections designed to uphold the quality of the goods sold and preserve Plaintiffs' right to control how the Purchased IP is used, and in what form.

(*Id.*).

In broad summary, the NL Suit alleges that the Lepore Parties have systematically violated the terms of the License Agreement. (Lepore 56.1 ¶ 22). The NL Plaintiffs allege violations "ranging from ignoring license restrictions on pricing and sales channels, to flouting all contractual requirements governing use of the Purchased IP, failing to adhere to non-compete and non[-]disparagement obligations and public-statement prohibitions, and wrongfully co-mingling the Licensed Marks with the products and marks of third-party collaboration partners[.]" (Hartford 56.1 ¶ 6). Further, the NL Plaintiffs allege that certain collaborations by the NL Parties have damaged the image and goodwill of the Purchased IP by associating the brand with allegedly inappropriate, offensive, and sexist messages. (*Id.* at ¶ 13; Lepore 56.1 ¶ 23).

They also allege that certain comments by Lepore suggesting that she retained operational control of the Purchased IP violated the License Agreement. (Hartford 56.1 ¶ 15). And the suit alleges that Lepore's use of social media accounts, which were a subject of the purchase agreement, to promote the candidacy of Hillary Clinton and oppose the candidacy of Donald Trump damaged the value of the Purchased IP and violated the terms of the License Agreement. (Lepore 56.1 ¶ 23).

The Lepore Parties, as they must, concede that not every claim in the NL Suit is covered by the Hartford Policies, but rely heavily on two causes of action that, they argue, implicate coverage (or at least a duty to defend). (Lepore 56.1 ¶ 24). In particular, the Sixth Cause of Action for Tortious Interference with an Advantageous Business Relationship alleges that Lepore and Savage intentionally interfered with the relationship between the NL Plaintiffs and NLHE by causing NLHE, which they control, to breach the License Agreement. (*Id*.). The Seventh Cause of Action for Unfair Competition alleges that all the Lepore Parties had misappropriated the Purchased IP by: (i) using the NANETTE LEPORE trademarks outside the scope of use permitted by the License Agreement; (ii) using the Purchased IP in connection with unauthorized collaborations with third parties; (iii) allowing collaborators to use the Purchased IP in association with inappropriate messaging, which damaged the value of the Purchased IP; and (iv) wrongfully competing with the NL Plaintiffs' NANETTE LEPORE apparel products. (*Id*.).

### 4. The Denial of Coverage

On February 15, 2017, NLHE and Robespierre notified Hartford of the NL Suit. (Lepore 56.1 ¶ 25). On May 10, 2017, Hartford informed NLHE that it would not defend or indemnify the Lepore Parties in the NL Suit. (*Id.* at ¶ 26). On June 12, 2017, the Lepore Parties requested reconsideration, and on October 19, 2017, Hartford reaffirmed their prior decision. (*Id.* at ¶ 30).

### B. Procedural Background

On January 25, 2018, Plaintiffs brought this action to require Hartford to defend the Lepore Parties in the NL Suit and to recover the costs incurred to defend the Lepore Parties, plus interest. (Dkt. #1). On February 5, 2018, the Lepore Parties filed their amended complaint. (Dkt. #8). Hartford filed its answer and affirmative defense on February 27, 2018. (Dkt. #14).

On March 26, 2018, the parties cross-moved for summary judgment. (Dkt. #32-25, 39-43). Both parties' opposition briefs were filed on April 16, 2018. (Dkt. #44, 49). Both parties' reply briefs were filed on April 30, 2018. (Dkt. #54, 57).

## DISCUSSION

### A. Applicable Law

### 1. Summary Judgment Motions

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a); *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986).[3] A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Jeffreys* v. *City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).

"It is the movant's burden to show that no genuine factual dispute exists" and a court "must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Vt. Teddy Bear Co., Inc.* v. *1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). If the movant has met its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts" and, toward that end, "must come forward with specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal citations and quotation marks omitted). The nonmoving party may not rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986).

---

[3]     The 2010 Amendments to the Federal Rules of Civil Procedure revised the summary judgment standard from a genuine "issue" of material fact to a genuine "dispute" of material fact. *See* Fed. R. Civ. P. 56, advisory comm. notes (2010 Amendments) (noting that the amendment to "[s]ubdivision (a) ... chang[es] only one word — genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination."). This Court uses the post-amendment standard, but continues to be guided by pre-amendment Supreme Court and Second Circuit precedent that refer to "genuine issues of material fact."

Local Civil Rule 56.1 requires that the movant file a "short and concise statement ... of the material facts as to which the moving party contends there is no genuine issue to be tried" and each proffered fact will be deemed admitted "unless specifically controverted by a correspondingly numbered paragraph[.]" Local Civ. R. 56.1(a)-(c). Each statement must be supported by a citation to admissible evidence. *Id.* at 56.1(d). But a reviewing court "may not rely solely on the statement of undisputed facts[,] ... [i]t must be satisfied that the citation to evidence in the record supports the assertion." *Vt. Teddy Bear Co.*, 373 F.3d at 244 (citing *Giannullo* v. *City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003)). A district court "must ask not whether the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." *Simpson* v. *City of New York*, 793 F.3d 259, 265 (2d Cir. 2015).

## 2. Interpretation of Insurance Contracts Under New York Law

"Insurance policies are, in essence, creatures of contract, and, accordingly, subject to principles of contract interpretation." *Porco* v. *Lexington Ins. Co.,* 679 F. Supp. 2d 432, 435 (S.D.N.Y. 2009) (quoting *In re Estates of Covert,* 97 N.Y.2d 68, 76 (2001) (internal quotation marks omitted)). Under New York law, the interpretation of a contract "is a matter of law for the court to decide." *Int'l Multifoods Corp.* v. *Commercial Union Ins. Co.,* 309 F.3d 76, 83 (2d Cir. 2002) (internal citation omitted); *see also Parks Real Estate Purchasing Grp.* v. *St. Paul Fire and Marine Ins. Co.,* 472 F.3d 33, 42 (2d Cir. 2006) ("[T]he initial interpretation of a contract is a matter of law for the court to decide."

(internal quotation marks and citation omitted)).  In this case, "[t]he parties do not dispute the material facts underlying the claim[,]" therefore, the case rests on interpretation of the insurance contract, which "is a question of law[.]"  VAM *Check Cashing Corp.* v. *Fed. Ins. Co.,* 699 F.3d 727, 729 (2d Cir. 2012)

The Court must interpret unambiguous contractual provisions in light of "'their plain and ordinary meaning.'"  *10 Ellicott Square Court Corp.* v. *Mountain Valley Indem. Co.,* 634 F.3d 112, 119 (2d Cir. 2011) (quoting *Essex Ins. Co.* v. *Laruccia Constr., Inc.*, 898 N.Y.S.2d 558, 559 (2d Dep't 2010)).  The Court must interpret such terms "in light of 'common speech' and the reasonable expectations of a businessperson."  *Belt Painting Corp.* v. *TIG Ins. Co.,* 100 N.Y.2d 377, 383 (2003) (internal citation omitted).  "Where contractual language is ambiguous and subject to varying reasonable interpretations, intent becomes an issue of fact and summary judgment is inappropriate....  Only where the language is unambiguous may the district court construe it as a matter of law and grant summary judgment accordingly."  *Palmieri* v. *Allstate Ins. Co.,* 445 F.3d 179, 187 (2d Cir. 2006) (internal quotation marks and citations omitted).

If a contract term is "susceptible to at least two reasonable interpretations," summary judgment is inappropriate because the meaning of an ambiguous contract term is "generally an issue of fact, requiring the trier of fact to determine the parties' intent."  *U.S. Naval Inst.* v. *Charter Commc'ns, Inc.,* 875 F.2d 1044, 1048 (2d Cir. 1989) (internal citations omitted).  In contrast, if the contractual terms are unambiguous, the dispute is properly

resolved on summary judgment, and the court must "give effect to the intent of the parties as expressed in the clear language of the contract." *Mount Vernon Fire Ins. Co.* v. *Belize NY, Inc.*, 277 F.3d 232, 236 (2d Cir. 2002) (internal quotation marks and citation omitted).

### 3.    The Duty to Defend

The New York Court of Appeals has described the duty to defend as follows:

> [A]n insurance company's duty to defend is broader than its duty to indemnify.  Indeed, the duty to defend is exceedingly broad and an insurer will be called upon to provide a defense whenever the allegations of the complaint suggest a reasonable possibility of coverage.  If, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be.

*Automobile Ins. Co. of Hartford* v. *Cook*, 7 N.Y.3d 131, 137 (2006) (internal quotation marks and citations omitted).  "The duty [to defend] remains even though facts outside the four corners of [the] pleadings indicate that the claim may be meritless or not covered." *Id.* (internal quotation marks and citation omitted).  "[T[he insurer will be required to provide a defense unless it can demonstrate that the allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, in toto, are subject to no other interpretation." *Id.* (internal quotation marks and citations omitted).

**B.     Analysis**

The Court considers whether coverage for the NL Suit is barred by the Policies' exclusions, rather than whether the allegations in that suit qualify for coverage in the first instance.  While the Lepore Parties spend much of their briefing explaining why the NL Suit allegations are covered by the Hartford Policies (*see* Lepore Br. 2-7; Lepore Opp.1-7), Hartford focuses almost entirely on exclusions from coverage (*see* Hartford Br. 10-19; Hartford Opp. 6-22).[4]

The Lepore Parties correctly note that the typical order of analysis is to determine whether an allegation falls within a policy's coverage and only then turn to exclusions.  (Lepore Opp. 1 (citing *Town of Massena* v. *Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 443 (2002), and *SR Int'l Bus. Ins. Co.* v. *World Trade Ctr. Props. LLC*, No. 01 Civ. 9291 (HB), 2006 WL 3073220, at *10 n.37 (S.D.N.Y. Oct. 31, 2006))).  However, given Hartford's reliance on exclusions, the Court assumes that coverage would otherwise apply and focuses its analysis on the core areas of disagreement between the parties, namely, the breadth of the Policies' exclusions and their applicability to the NL Suit.

**1.     The IP Exclusion Applies to the Entire NL Suit**

Hartford's argument for application of the IP Exclusion is straightforward:  The IP Exclusion bars coverage for any suit that contains as one of its allegations a violation or infringement of intellectual property, and

---

[4]     Hartford contests whether the allegations suffice for coverage in one section of its opening brief and a single paragraph of its opposition.  (*See* Hartford Br. 19-22; Hartford Opp. 24).  Hartford does not discuss coverage in its reply brief.

the NL Suit alleges infringement of the Purchased IP. (Hartford Br. 10).

Hartford points to numerous allegations in the NL Suit in which the Lepore

Parties are alleged to have used the NL Plaintiffs' intellectual property without

authorization, particularly the allegation of unfair competition, which alleges a

likelihood of confusion between the Lepore Parties' allegedly infringing products

and the NL Plaintiffs'. (*See* Hartford Br. 12 ("Those allegations include claims

that the Lepore Claimants used the Purchased IP and NANETTE LEPORE mark

in commerce, and in connection with the sale or advertising of goods and

services without the NL Plaintiffs' consent, and that such use is likely to cause

confusion.")). Hartford argues that this claim is essentially a claim for

trademark infringement, as the tests for unfair competition under New York

Law and trademark infringement under the Lanham Act overlap. *See*

*A.V.E.L.A., Inc.* v. *Estate of Marilyn Monroe, LLC,* 131 F. Supp. 3d 196, 209

(S.D.N.Y. 2015) ("The elements of an unfair competition claim in New York

largely mirror those under the Lanham Act.").

According to Hartford, the NL Suit allegations clearly invoke the IP

Exclusion, as they allege injuries "arising out of an[] actual or alleged

infringement or violation of any intellectual property right." (Hartford 56.1

¶ 35). New York courts have construed the language "arising out of" broadly:

"In insurance contracts, the phrase arising out of is ordinarily understood to

mean originating from, incident to, or having connection. It requires only that

there be some causal relationship between the injury and the risk for which

coverage is provided or excluded." *Nat. Organics, Inc.* v. *OneBeacon Am. Ins.*

*Co.*, 959 N.Y.S.2d 204 (2d Dep't 2013) (internal citations and quotation marks omitted). Therefore, the allegations against the Lepore Parties clearly include claims arising out of an "alleged infringement of an intellectual property right."

Since at least some claims implicate the IP Exclusion, Hartford argues that the entire suit is excluded from coverage by the second paragraph of the Exclusion, which provides:

> Any injury or damage alleged in any claim or "suit" that also alleges an infringement or violation of any intellectual property right, whether such allegation of infringement or violation is made against you or any other party, involved in the claim or "suit", regardless of whether this insurance would otherwise apply.

(Hartford 56.1 ¶ 35). On a plain reading of this text, so long as one claim alleges an infringement of an intellectual property right, the exclusion bars coverage for the entire suit. Hartford acknowledges that the breadth of this exclusion would eliminate the duty to defend for a host of otherwise-covered suits, but points to a number of courts around the country that have upheld analogous exclusions. (*See* Hartford Br. 13-16).

The Court concludes that the text of the IP Exclusion clearly applies a complete bar to coverage for any claims brought in a suit that also alleges intellectual property infringement. To argue against this reading, the Lepore Parties offer the Court reasons why the second paragraph of the IP Exclusion does not mean what it most plainly states. In their opposition papers, the Lepore Parties offer five objections. (*See* Lepore Opp. 11-16). In their own briefing, they offer three. (*See* Lepore Reply 2). Since many appear to overlap,

the Court has endeavored to break them out.  The Court addresses and rejects each of them in turn.

### a.      The NL Suit Alleges an Infringement or Violation of Intellectual Property Rights

The Lepore Parties argue first that the NL Suit does not explicitly label any claim to be for trademark infringement.  (*See* Lepore Opp. 8 ("[T]he statute governing trademark infringement — the Lanham Act (as well as state statutes) are neither cited nor referenced to in the [NL] Suit[.]")).  They add that the distinctions between claims for unfair competition and trademark infringement are clear, and that absent "an express claim for intellectual property infringement," the exclusion should not apply.  (*Id.* at 11).  While the Lepore Parties are correct that the cases cited by Hartford bring express claims for trademark infringement under the Lanham Act or state statutes, the Court does not consider them dispositive of the coverage issue.

The Lepore Parties fundamentally misperceive the IP Exclusion, which is far broader than a bar on coverage for trademark infringement or a violation of state statutes.  It applies to "'[p]ersonal and advertising injury' arising out of any actual or alleged infringement or violation of any intellectual property right." (Hartford 56.1 ¶ 35).  The Court has examined the NL Complaint, which is rife with allegations that the Lepore Parties have used the Purchased IP in violation of the parties' agreements.  (*See, e.g.,* NL Complaint ¶¶ 66, 73, 74, 75, 76, 83).

The New York Court of Appeals has held that what matters in analyzing exclusions is not the labels provided in the underlying complaint, but rather

the facts upon which the allegations rest. *See Allstate Ins. Co.* v. *Mugavero*, 79 N.Y.2d 153, 162-63 (1992) ("[T]he analysis depends on the facts which are pleaded, not the conclusory assertions[.]"). The Unfair Competition claim in the NL Complaint clearly alleges violations of the NL Plaintiffs' intellectual property rights.

> Among other things, Defendants' acts either have caused the public to be confused, or are likely to cause the public to mistakenly believe, that Defendants are authorized to sell products bearing the Licensed Marks in a manner that undercuts Plaintiffs' and/or Plaintiffs' licensee(s) with respect to their NANETTE NANETTE LEPORE diffusion line of products, or that Plaintiffs endorse the EDDIE EDDIE collaboration and its use of inappropriate messages stamped onto its line of women's apparel marketed and sold in association with the NANETTE LEPORE brand.

(NL Complaint ¶ 196). This Court need not decide whether *any* claim of unfair competition would bring a suit within the IP Exclusion, because these allegations state a claim for violation of intellectual property rights.

In another attempt to argue that the NL Suit does not involve a claim of infringement, the Lepore Parties point to paragraph 9.8 of the License Agreement. This paragraph provides that "[e]ach party shall promptly notify the other in writing if it has reason to believe, or knowledge of, any Infringements of the Licensed Marks … which notice shall include the details of such Infringements. awards and other compromises of claims." (*See* Hartford Request for Judicial Notice, Exhibit 1-B (Dkt. #35-3), License Agreement ("License Agreement") ¶ 9.8). The Lepore Parties argue from this provision that the NL Suit cannot properly be understood to involve allegations of

infringement, because the NL Plaintiffs never provided the requisite notice. (*See* Lepore Opp. 10).

This Court agrees with Hartford that the cited paragraph explains how the parties will handle *third-party* infringement. (*See* Hartford Reply 4). It begins:

> Licensor shall have the first right to bring any action on account of any infringement, imitation, parallel import, gray market goods or unauthorized use of the Licensed Marks within the Territory (hereinafter collectively "Infringements"). For clarification and not limitation, any right of Licensee to commence an action for Infringements shall be limited to Infringement of the Licensed Marks in the Territory and as used in connection with the Products only. All other rights to commence actions or otherwise are reserved expressly for Licensor

(License Agreement ¶ 9.8). The words "first right" would have no meaning in a dispute between the contracting parties themselves, and the Court determines that this language is intended to structure the rights of the parties to bring infringement claims against third parties.

Furthermore, as Hartford notes (*see* Hartford Reply 4), the paragraph later states that "based upon Licensor's independent knowledge … Licensor may, in its sole discretion commence, and in such case shall diligently prosecute any claims or suits in its own name or in the name of Licensee or join Licensee as a party thereto." (License Agreement ¶ 9.8). The Court does not consider this paragraph to be evidence that the NL Suit does not involve a claim of infringement, and instead concludes that the NL Plaintiffs have alleged

numerous injuries based on the violation of their rights in the Purchased IP.

Therefore, at least some of their claims are covered by the IP Exclusion.

### b. The Court Does Not Adopt Plaintiffs' Narrowing Construction of Paragraph 2 of the IP Exclusion

The Lepore Parties contend that the second paragraph of the IP

Exclusion must be given a narrow meaning, or the coverage would be virtually

useless. (Lepore Opp. 13-14). In support, they cite *City of New York* v.

*Evanston Insurance Co.*, which held that an ambiguous use of the world

"solely" should be interpreted "according to the reasonable expectations and

purposes of ordinary businesspeople when making ordinary business

contracts." 830 N.Y.S.2d 299, 302 (2d Dep't 2007). The Lepore Parties argue

that the reading Hartford offers of the IP Exclusion would not accord with such

expectations, as it would provide "extremely narrow coverage[, which] would be,

at best, of minimal value to the reasonable businessperson." (*Id.*). In further

support, the Lepore Parties cite to a number of cases for the proposition that

ambiguities in an insurance contract should be read in favor of the claimant.

(*See* Lepore Opp. 14 (citing *Oppenheimer AMT-Free Mun.* v. *ACA Fin. Guar.*

*Corp.*, 971 N.Y.S.2d 95, 98 (1st Dep't 2013), and *Pioneer Tower Owners Ass'n* v.

*State Farm Fire & Cas. Co.*, 12 N.Y.3d 302, 307 (2009))).

While it is true that ambiguities in contract provisions are read in favor

of the claimant, the Lepore Parties fail to identify a relevant ambiguity in the IP

Exclusion. Hartford points to cases from around the country where courts

have found similar provisions to be unambiguous. (*See* Hartford Br. 13-17).

For instance, in *Vitamin Health, Inc.* v. *Hartford Casualty Insurance Co.*, the

court found that a similar IP exclusion "clearly and unambiguously bar[red] coverage" where an infringement claim was coupled with a non-infringement claim. 186 F. Supp. 3d 712, 720 (E.D. Mich. 2016), *aff'd*, 685 F. App'x 477 (6th Cir. 2017) (unpublished disposition). In *Tela Bio, Inc.* v. *Federal Insurance Co.*, a court examined a similar policy and concluded similarly:

> Paragraph B excludes from coverage "the entirety of all allegations in any ... suit" in which there is an allegation of a violation of intellectual property rights, "even if the insurance would otherwise apply to any part of the allegations in the ... suit." While perhaps harsh in its application, it cannot be seriously disputed that Paragraph B of the IP Rights Exclusion clearly and unambiguously excludes from coverage all allegations within a suit, if that suit contains any allegations of intellectual property rights violations.

313 F. Supp. 3d 646, 659 (E.D. Pa. 2018). The Third Circuit affirmed this conclusion. *See TELA Bio, Inc.* v. *Fed. Ins. Co.,* No. 18-1717, 2019 WL 211507, at *3 (3d Cir. Jan. 16, 2019) ("The expansive language ... clearly and unambiguously excludes from coverage all allegations within a suit, if that suit contains any allegations of intellectual property rights."). Plaintiffs do not point to a single decision that has held similar policy language to be ambiguous.

Rather than contesting the particular language of the Policies, the Lepore Parties reiterate the point that the IP Exclusion would be too broad absent a narrowing construction. They cite *to Emmis Communications Corp.* v. *Illinois National Insurance Co.*, which held that it "would be nonsensical to read [an exclusion] in such a way that whether [the Claimant] had insurance coverage for a lawsuit filed against it would depend on the whim of the plaintiff's attorney who drafted the complaint in the lawsuit." 323 F. Supp. 3d 1012,

1027 (S.D. Ind. 2018).  But while the language of *Emmis* provides facial support for the Lepore Parties' position, the contractual provisions in that case bear little resemblance to those here.  The court's analysis suggested that finding in favor of the insurer might precipitate exclusions from coverage, where the underlying suit did something as simple as allege "that [the Claimant was] a publicly-traded corporation, or even simply that [it did] business in Indiana."  *Emmis Commc'ns Corp.*, 323 F. Supp. 3d at 1026.  By contrast, Hartford has provided a litany of cases where substantially similar IP exclusions were assessed by courts and found unambiguous.

Despite the concededly broad sweep of the IP Exclusion, the Court does not consider the language ambiguous.  More to the point, the Court finds that the unambiguous language of the IP Exclusion excludes coverage of any claim brought in a case, where the underlying suit brings allegations of infringement or violation of Intellectual Property rights.

### c.    The IP Exclusion Extends to Unfair Competition Claims

The Lepore Parties' third argument largely mirrors their first, as they again allege that the IP exclusion does not include claims for unfair competition.  In this section, Plaintiffs offer a series of case citations (*see* Lepore Opp. 14-15), but none, ultimately, supports the argument that the unfair competition claim in the NL Suit is beyond the scope of the IP Exclusion.

For instance, Plaintiffs cite *JAR Laboratories, LLC* v. *Great American Eastern & Southern Insurance Co.*, 945 F. Supp. 2d 937 (N.D. Ill. 2013) ("*JAR Labs*").  There, the court determined that a claim of unfair competition was not

covered by an IP exclusion clause.  However, the court explicitly contrasted the unfair competition claim brought in that case, which rested on allegations of false advertising, from claims resting on allegations of infringement of intellectual property rights.  *See JAR Labs*, 945 F. Supp. 2d at 945 (distinguishing case from those where "the unfair competition alleged was the infringement or misappropriation of a specific intellectual property right").  In this case, the NL Suit quite clearly rests its unfair competition claim on the misappropriation of the "NANETTE LEPORE trademark and other components of the Purchased IP[.]"  (Hartford Reply 3).  *JAR Labs* provides no support for the argument that an unfair competition claim that explicitly invokes the infringement of an intellectual property right is beyond the scope of an IP Exclusion.

The remainder of Plaintiffs' briefing in this section largely consists of disjointed citations to precedents that emphasize that ambiguities in contract interpretation must be read in favor of the claimant, and that exclusions must be explicit to be enforced.  As the Court has discussed in the prior two sections, the IP Exclusion is sufficiently clear as to bar coverage of certain claims in the NL Suit, and the second paragraph of the Exclusion is unambiguous in excluding coverage for any suit which includes a claim barred by the IP Exclusion.

### d. The IP Exclusion Is Not Limited to Express Allegations of Intellectual Property Infringement

Plaintiffs' fourth objection is difficult to follow.[5]  The Lepore Parties appear to argue that because the second paragraph of the IP Exclusion does not contain the words "arising out of" or "actual or alleged," as in the first paragraph, the second paragraph is implicitly limited to cases where an express intellectual property infringement claim is brought.  The Court does not agree.

There is no suggestion in the language of the second paragraph that any new limitation is introduced to the IP Exclusion.  Indeed, the entire thrust of the second paragraph is to expand the IP Exclusion.  The second paragraph not only encompasses "[a]ny injury or damage alleged in any claim or 'suit' that also alleges an infringement or violation of any intellectual property right," but it also expands the coverage bar to "any allegation of infringement or violation … against you or any other party involved in the claim or 'suit.'" (Lepore 56.1 ¶ 35).  There is no suggestion of limitation in the exclusion.

---

[5]    *See* Lepore Opp. 16:

> To know whether an intellectual property claim was asserted, Lepore must await an adjudication of liability limiting its scope to proof of trademark infringement. Absent such proof, Hartford's IP exclusions would deprive it of the notice that is presumed by the contextually consistent third paragraph of Hartford's IP exclusion which expressly requires an allegation in the claim or "suit . . . limited to: (1) infringement . . . ." Paragraph (2) of Hartford's IP Exclusion thereby reinforces the "alleged" versus "adjudicated" construction of Paragraph 2 so as to bring it in harmony with Paragraph 3. Both paragraphs are not preceded by predicate "arising out of" or "actual or alleged" language

The Court again declines to find ambiguity where none exists. "Contract language is not ambiguous if it has a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *Hunt Ltd.* v. *Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989) (quoting *Breed* v. *Ins. Co. of N. Am.*, 46 N.Y.2d 351, 352 (1978)). The Court does not find ambiguity in language that explicitly uses the terms "any injury or damage" in "any claim or suit" for "an infringement or violation of any intellectual property right." This language does not lend itself to misconception; it was drafted to be as broad as possible and to cover any and all intellectual property claims.[6]

### e. The IP Exclusion Applies to Defense and Indemnity

Plaintiffs argue that because "Paragraph 2 has no 'actual or alleged' or 'arising out of' predicate language[,] … one reasonable construction of Paragraph 2 is that it only applies to indemnity." (Lepore Reply 2). This argument largely mirrors the prior one, in its attempt to create ambiguity where none exists. This argument was rejected in *Dollar Phone Corp.* v. *St. Paul Fire & Marine Insurance Co.*, where the court held: "There is no reasonable basis for concluding that the absence of the 'actual or alleged' language in certain exclusions must be interpreted to mean that [the insurer] has the duty to defend against allegations which, if proven to be meritorious, would be

---

[6] The IP Exclusion does contain exceptions in paragraph three. (Hartford 56.1 ¶ 35). Plaintiffs do not argue that any of those exceptions applies to this case.

outside the coverage of the policy." No. 09 Civ. 1640 (DLI) (VVP), 2012 WL 1077448, at *11 (E.D.N.Y. Mar. 9, 2012), *report and recommendation adopted*, No. 09 Civ.1640 (DLI) (VVP), 2012 WL 1078994 (E.D.N.Y. Mar. 30, 2012), *aff'd*, 514 F. App'x 21 (2d Cir. 2013) (summary order). Unsurprisingly, the Lepore Parties spend much of their briefing attacking *Dollar Phone* as contrary to New York law. (Lepore Br. 15-16).

The Court discusses the *Dollar Phone* decision at greater length *infra*, as it arises more prominently in the context of the Breach Exclusion. At this stage, it is not necessary to engage in discursive analysis of that opinion, as nothing in the Policies suggests that the IP Exclusion is properly limited to indemnity. Plaintiffs at another point provide a standard for the duty to defend from *Curtis* v. *Nutmeg Ins. Co.*, 612 N.Y.S.2d 256 (3d Dep't 1994). (*See* Lepore Opp. 7). This standard provides that an insurer will not have a duty to defend or indemnify, where "the allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, in toto, are subject to no other interpretation." *Curtis*, 612 N.Y.S.2d at 258. The Court finds that the allegations in the NL Complaint clearly invoke the IP Exclusion, by repeatedly alleging infringements of the Purchased IP. By doing so, the complaint implicates the second paragraph, which necessarily excludes from coverage the entirety of the NL Complaint.

###### f. The IP Exclusion's Second Paragraph Does Not Contain a Predicate of "Personal and Advertising Injury"

Alternatively, the Lepore Parties also suggest that the second paragraph must be limited by the personal and advertising injury of the first paragraph.

(*See* Lepore Br. 17 ("One reasonable construction of Paragraph 2 read in the context of Hartford's IP exclusion as a whole is that it applies only to those allegations that fall within the predicate coverage in [paragraph]1 for 'personal and advertising injury.'")). The Court again finds that the language of the IP Exclusion contains no such limitation. The second paragraph does not use the same language as the first paragraph, and instead eliminates coverage for "[a]ny injury or damage alleged in any claim or 'suit.'" (Hartford 56.1 ¶ 35).

The Court agrees with the analysis in *WAWGD, Inc.* v. *Sentinel Insurance Co.*, which is paraphrased here:

> The [NL Suit] ... includes allegations of [intellectual property] infringement implicating subpart (b) of this exclusion, which, contrary to [the Lepore Parties'] argument, applies to any injury or damage alleged in a lawsuit including a [intellectual property] infringement claim, and is therefore not limited to personal and advertising injury claims. The intellectual property exclusion "establishes as a matter of law that [Lepore] is not entitled to a defense in [connection with the [NL Suit]]. The policy language is clear and explicit and is, therefore, dispositive.

No. 16 Civ. 2917 (CAB) (BGS), 2017 WL 4340437, at *6 (S.D. Cal. Sept. 29, 2017) (cited in Hartford Opp. 11). The Court declines to graft new exceptions onto the explicit language of the IP Exclusion.

### g. The IP Exclusion Is Clear and Specific as to the Claims Excluded from Coverage

Finally, the Lepore Parties object to the placement of the IP Exclusion within the Policies and argue that the Hartford improperly buried a major change in their coverage. They argue that absent explicit warnings, this

provision is invalid.  (*See* Lepore Br. 17-22).  The Court concludes that the

contractual language is sufficiently clear as to the extent of the exclusions.

    In support of their arguments, Plaintiffs rely on California cases that

make clear that exclusions "must be placed and printed so that [they] will

attract the reader's attention."  *Haynes* v. *Farmers Ins. Exch.*, 32 Cal. 4th 1198,

1204 (Cal. 2004).  However, as Defendant notes, a court in California reviewing

a similar IP exclusion has already found it to be clear and conspicuous under

that standard.  (Hartford Opp. 11-12).

    In *Pinnacle Brokers Insurance Solutions LLC* v. *Sentinel Insurance

Company, Ltd.*, the district court determined that an IP Exclusion using

identical warnings was conspicuous and clear:

> It is located on a page titled, in bold capitalized letters,
> "Amendment of Exclusions and Definition — Personal
> and Advertising Injury," which contains the following
> warning, also in bold capitalized letters: "This
> endorsement changes the policy. Please read it
> carefully." Policy at 48. The endorsement is the first on
> the page, and is not hidden in fine print nor placed in
> an unusual part of the policy.  Its language clearly and
> unambiguously communicates that (1) personal and
> advertising injury arising out of any actual or alleged
> infringement or violation of any intellectual property
> right is excluded from the policy; (2) a trade secret is
> considered intellectual property; and (3) any injury or
> damage alleged in a suit that also alleges an
> infringement or violation of an intellectual property
> right is also excluded.  Policy at 48.  The exclusion is
> valid and enforceable.

No. 15 Civ. 02976 (JST), 2015 WL 5159532, at *4 (N.D. Cal. Sept. 2, 2015).  In

this case, the IP Exclusion is located in two separate sections of the policy.

Both recite, in bold letters, "This endorsement changes the policy. Please read

it carefully." (Amended Complaint, Exhibit 1 (Dkt. #8-1) (Hartford Policies) at 172, 174). The exclusions are not buried in footnotes or written in fine print, and as the Court has already discussed, the language is unambiguous. (*Id.*).[7]

The Court agrees with Hartford that the prominent endorsement constitutes sufficient warning to the insured. (*See* Hartford Opp. 12-13). The Second Circuit has held that similar language effectively amends the language of an insurance contract. *See Cincinnati Ins. Co.* v. *Harleysville Ins. Co.*, 709 F. App'x 71, 75 (2d Cir. 2017) (summary order) (citing *CGS Industries* v. *Charter Oak Fire Ins. Co.*, 720 F .3d 71, 84 (2d Cir. 2013); *DRK, LLC* v. *Burlington Ins. Co.*, 905 N.Y.S.2d 58 (1st Dep't 2010)).

In sum, the Court holds that the IP Exclusion is unambiguous, clear, conspicuous — and enforceable. The NL Suit alleges that the Lepore Parties repeatedly infringed on the NL Plaintiffs' rights in the Purchased IP. The IP Exclusion excludes coverage of "[a]ny injury or damage alleged in any claim or 'suit' that also alleges an infringement or violation of any intellectual property right[.]" No objection overcomes these core points. While this determination entitles Hartford to summary judgment, the Court considers the Breach Exclusion, and concludes that it is an equally valid basis on which to deny coverage.

---

[7]     As Hartford points out (*see* Hartford Opp. 13 n.2), Plaintiffs offer a quotation from *Lifson* v. *INA Life Ins. Co.*, 333 F.3d 349, 353 (2d Cir. 2003), to suggest that Hartford has improperly buried the IP Exclusion (*see* Lepore Br. 18). This case does not contain the cited quotation, nor does it speak to the issue at all.

## 2. The Breach Exclusion Bars Coverage

Unlike the IP Exclusion, the Breach Exclusion only applies to "'Personal and advertising injury' arising out of a breach of contract." (Hartford 56.1 ¶ 36). There is no second paragraph expanding the exclusion beyond claims that allege contractual breaches. No matter, argues Hartford, because every claim in the NL Suit alleges wrongful acts in breach of either the contract by which the NL Plaintiffs gained the Purchased IP or the License Agreement. (*See* Hartford Br. 17-19).

"Under New York law, this type of exclusion is governed by a 'but for' test. ... Thus only if the ... injury suffered by [the underlying plaintiff] would not exist but for the breach of contract, would the injury 'arise out of' a breach of contract." *Fantasia Accessories, Ltd.* v. *N. Assurance Co. of Am.*, No. 01 Civ. 663 (AGS), 2001 WL 1478807, at *9 (S.D.N.Y. Nov. 20, 2001) (internal citations omitted). Hartford argues that each claim in the NL Suit invokes the alleged breach by the Lepore Parties. (Hartford 56.1 ¶ 25 (citing NL Complaint ¶¶ 38-59)). Specifically, the Purchased IP that Lepore allegedly infringed only came to the NL Plaintiffs by way of the purchase agreement, and the defamatory statements that Lepore allegedly made were in breach of the License Agreement. (*Id.* at ¶ 15). In Hartford's estimation, there are no claims that exist independently of the contracts between the NL Plaintiffs and the Lepore Parties. In response, the Lepore Parties offer several reasons why the Breach Exclusion does not apply. The Court examines them all and finds them wanting.

### a. The NL Suit Claims Depend on the Contracts With the Lepore Parties

The Lepore Parties first argue that the Breach Exclusion does not apply, because the NL Suit rests some of its claims on defamatory language by Lepore. (Lepore Br. 9-10). In this regard, they argue, "As *Career Sys. Dev. Corp.* v. *Am. Home Assur. Co.*, No. C 10-2679 BZ, [2011 WL 4344578, at *5] (N.D. Cal. Sept. 14, 2011) concluded on analogous facts '[b]ecause liability for [publishing defamatory] statements would constitute the separate tort of defamation and have no relation to any contract between the parties, the breach of contract exclusion does not apply.'"). (*Id.* at 10). The cited case does not assist the Lepore Parties, as the very quote they introduce reveals a major difference: The allegedly defamatory statements in the NL Suit do not have "*no relation to any contract between the parties*"; they are explicitly alleged to be in breach of the parties' contractual agreements. (*See* Hartford 56.1 ¶ 15 ("Defendants' unauthorized, false and misleading public statements regarding the Transaction, as reflected in the Fashionista Article and the Design & Trend Article, were made in violation of Section 9.9 of the License Agreement.")).

This is not Plaintiffs' only citation to a case that does not support their arguments. On the same page, they continue: "[A]s explained in *Pac. Telesis Grp.* v. *Nat'l Union Fire Ins. Co.*, No. C 98-2555 CRB, [1999 WL 155697, at *4] (N.D. Cal. Mar. 16, 1999), under circumstances that are directly analogous here: '[T]he allegedly defamatory and libelous conduct here is separate and independent from the breach of contract.'" (Lepore Br. 10). Again, the Court disagrees that the case is analogous to the one at issue here, where the

allegedly defamatory conduct is described specifically as in breach of contractual agreements.

The Court agrees with Hartford that this case is fundamentally different from cases where courts have limited breach exclusions, because "[w]ithout the [contracts], there would be no relationship at all between the NL Suit Plaintiffs and the Lepore Claimants." (Hartford Opp. 15-16). Hartford points out, and the Lepore Parties do not dispute, that every claim in the NL Suit invokes the agreements and argues that the Lepore Parties have violated them. (*Id.* at 16).

In response, the Lepore Parties rely on cases such as *Hugo Boss Fashions, Inc.* v. *Federal Insurance Co.*, 252 F.3d 608, 620 (2d Cir. 2001), and *Natural Organics, Inc.* v. *OneBeacon America Ins. Co.*, 959 N.Y.S.2d 204 (2d Dep't 2013). (Lepore Br. 9-10). In these cases, courts found that breach exclusions could not eliminate coverage, because certain claims existed independently of the breach claims. The Lepore Parties argue that the NL Suit has similar claims that do not require proof of breach. Not so. The cited cases indeed involved claims that did not "arise out of" a breach of contract. In *Hugo Boss*, the Second Circuit observed the "claims against [the insured] ... exist independent of the contract.... [the underlying plaintiff's] trademark rights arose long before it entered into the 1990 agreement with [the insured] and would exist even if [the underlying plaintiff] had never entered into that agreement and/or if that agreement had not been breached." 252 F.3d at 623. In the NL Suit, by contrast, the NL Plaintiffs only have claim to the underlying intellectual property by way of contract; indeed, the suit refers to the

*Purchased* IP throughout. All infringement claims arise out of the contract, and no claims would exist but for the contract.

In *Natural Organics,* the Appellate Division held that a breach exclusion could not bar coverage for disparagement claims, because the disparagement claims existed independently of the contract. 959 N.Y.S.2d at 208. In the NL Suit, the claims repeatedly reference the non-disparagement clauses of the agreements between the NL Plaintiffs and the Lepore Parties. The Court concludes that the claims in the NL Suit are subject to the Breach Exclusion.

### b.  The Absence of the Words "Actual or Alleged" Does Not Limit the Breach Exclusion to Actual Breaches of Contract

The Lepore Parties argue that the Breach Exclusion lacks the words "actual or alleged," and therefore, the Breach Exclusion must only apply to actual breaches. (Lepore Br. 11-12). For this proposition, the Lepore Parties rely on a number of decisions from California that have held that where the contract does not contain such information, the exclusion should be limited to actual breaches. (*Id.*). The Court does not agree.

As Hartford points out, these decisions are interpreting California law, which permits insurers to provide extrinsic evidence in support of policy exclusions. (*See* Hartford Opp. 21-22). For instance, *in KM Strategic Management, LLC* v. *American Casualty Co. of Reading, PA*, the court held that to bring a policy within the breach exclusion, an insurer "must point to 'conclusive evidence' establishing that any potential liability that the insured faced ... necessarily arose out of an actual breach — not an alleged breach[.]"

33

156 F. Supp. 3d 1154, 1171 (C.D. Cal. 2015). This discussion of "conclusive evidence" invokes the insurer's ability to present evidence as to the insured's liability in the underlying suit. New York provides no such avenue for insurers. *See Fitzpatrick* v. *Am. Honda Motor Co.*, 78 N.Y.2d 61, 66 (1991) ("[T]he courts of this State have refused to permit insurers to look beyond the complaint's allegations to avoid their obligation to defend.").

In examining a similar question under New York law, the court in *Dollar Phone* rejected the precise argument that the Lepore Parties offer here. In that case, the claimant argued, as here, that the absence of "actual or alleged" language in a non-conformity exclusion required the insurer to demonstrate "that the ... injury *actually* resulted from the non-conformity of an insured's products or work. *Dollar Phone*, 2012 WL 1077448, at *11 (emphasis in original). The court rejected this argument, holding:

> There is no reasonable basis for concluding that the absence of the "actual or alleged" language in certain exclusions must be interpreted to mean that [the insurer] has the duty to defend against allegations which, if proven to be meritorious, would be outside the coverage of the policy. Such an interpretation would completely alter the duty to defend as established in the case law and as defined in the contract.

*Id.* Furthermore, the court remarked that such a requirement would create an incentive for an insurer to prove that their insured was responsible for injuries and called such a reading "nonsensical." *Id.* at *12.

This Court considers the reasoning in *Dollar Phone* to be persuasive. Adopting the Lepore Parties' reasoning would rewrite the Policies with nonsensical results. The Court notes that the Second Circuit expressed no

34

criticism of the lower court's reasoning in its summary affirmance of the decision, which found "no ambiguity in the policy language, which plainly allow[ed] the insurer to disclaim coverage[.]" *See Dollar Phone Corp.* v. *St. Paul Fire & Marine Ins. Co.*, 514 F. App'x 21, 22 (2d Cir. 2013) (summary order). The Court holds, therefore, that the Breach Exclusion is not limited to cases of actual breach and applies to the allegations of breach that pervade the NL Suit.

### 3. There Is No Breach of the Covenant of Good Faith and Fair Dealing

Under the Breach Exclusion or the IP Exclusion, Hartford was well within its rights to deny coverage to the Lepore Parties. This not only eliminated Hartford's duty to defend, but it also requires dismissal of the Lepore Parties' allegations of a breach of the covenant of good faith and fair dealing. (*See* Hartford Br. 22-24; Hartford Reply 5-8). The Court agrees with Hartford, however, that even in the event that Hartford had incorrectly denied coverage to the Lepore Parties, there would be no breach of the covenant of good faith and fair dealing.

New York courts have strictly circumscribed tort claims that allege the breach of an underlying contract. "Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." *Harris* v. *Provident Life & Accident Co.*, 310 F.3d 73, 80 (2d Cir. 2002) (citing *Fasolino Foods Co.* v. *Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir. 1992)). Lepore argues that *Harris* is inapplicable, because "Lepore did allege tort 'independent' of its respective contract with Hartford and alleged bad faith denial of coverage in

that Hartford's conduct is grossly negligent, egregious in nature, directed at plaintiff Lepore and clearly part of a pattern directed at the public generally." (Lepore Opp. 23-24). The Court cannot discern any claim here that exists "independent" of the allegation of breach in failing to defend the Lepore Parties. As for the argument that the breach was done in bad faith, Hartford points to the number of decisions that have upheld similar exclusions in courts around the country. (*See* Hartford Reply 7-8). The Court sees nothing in the record to suggest that the denial of coverage was anything other than Hartford's assessment of the requirements of the Policies' language.

## CONCLUSION

The Court concludes that Breach and IP Exclusions foreclose Hartford from a duty to defend the NL Suit. The Court also dismisses the claim for breach of the covenant of good faith and fair dealing. For the reasons stated in this Opinion, Defendant's motion for summary judgment is GRANTED and Plaintiffs' cross-motion for partial summary judgment is DENIED.

The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:     March 12, 2019
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge